IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Action No. 16-cv-02838-LTB-KLM

JOHN DARDICK,

     Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA, a Maine corporation, and
FIRST UNUM LIFE INSURANCE COMPANY, a New York corporation,

     Defendants.

---

## ORDER

---

This case is before me on the parties' Joint Motion for Determination [Doc #

43].  After consideration of the parties' briefs, the record, and the case file, and for

the reasons stated below, I grant the motion and enter judgment in favor of

Defendants.

## I.  Background

Plaintiff is a former vice president of Westcon Cloud Services.

Administrative Record ("AR") 42.  This case arises out of Defendants Unum Life

Insurance Company of America and First Unum Life Insurance Company's

(collectively "Unum") denial of Plaintiff's claim for disability benefits under the

group disability benefits plan provided by Westcon Group, Inc. ("Westcon").

Plaintiff's claim against Unum is governed by the Employee Retirement Income

Security Act of 1974 ("ERISA").

## A. Plaintiff's Medical History

Plaintiff, now in his early 60's, has a long history of cardiovascular health issues dating back to when he suffered a heart attack while in his 30's. AR 72. Following his heart attack, Plaintiff underwent a coronary bypass grafting procedure and did relatively well following this procedure. *Id.*

In July of 2015, Plaintiff was seen by Nelson P. Trujillo, M.D., who first began treating Plaintiff in 2000, for complaints of chest pain, shortness of breath, and fatigue. AR 72 & 843. Dr. Trujillo reported that Plaintiff denied that he was experiencing depression or anxiety. AR 73. After a physical examination, Dr. Trujillo noted that Plaintiff had "[p]remature severe coronary artery disease with progressive symptoms concerning for recurrence/progression of his underlying atherosclerosis;" an abnormal nuclear stress test; and symptoms that were "clearly concerning." AR 74. Dr. Trujillo instructed Plaintiff to exercise daily by taking a 20 minute walk. *Id.*

Dr. Trujillo summarized a coronary angiogram performed on Plaintiff on July 17, 2015 as showing that Plaintiff was "incompletely revascularized with severe right distal coronary artery atherosclerosis, single mammary artery by-pass[,] and distal LAD artherosclerosis." AR 842. Dr. Trujillo further summarized that Plaintiff's "ejection fraction was reduced at 45%" as of July of 2015. *Id.*

On July 28, 2015, Plaintiff participated in a treadmill exercise stress test. AR 75-6. The recorded results reflect "[n]o exercise induced ECG changes;" a score consistent with "low cardiovascular risk (< 1% annual mortality);" and an abnormal

study with exercise induced angina pectoris but normal heart rate and blood pressure response. AR 75.

On August 31, 2015, Plaintiff underwent a percutaneous coronary intervention ("PCI"), or coronary angioplasty, procedure that was deemed successful. AR 497. During this procedure, Dr. Trujillo placed a stent in Plaintiff's right circumflex artery "although the right coronary artery remained too narrow to stent." AR 497 & 526.

Plaintiff was seen by Dr. Trujillo on September 18, 2015 for follow-up on the August 31, 2015 PCI. AR 142-44. Dr. Trujillo noted that Plaintiff continued to have angina with exertion and some rest angina with stress/anxiety and that he was "as completely revascularized as he can be after recent PCI." AR 142 & 144. Dr. Trujillo again reported that Plaintiff denied that he was suffering from anxiety or depression AR 143.

In addition to his cardiovascular health issues, Plaintiff had surgery on October 30, 2015 for "repair of left distal biceps insertion." AR 211. The surgeon noted in his operative report that Plaintiff suffered from longstanding left elbow pain and had felt something snap in his elbow when he was pushing a wheelbarrow. *Id.* The surgeon further noted that Plaintiff had persistent pain and "altered neurological symptoms" in his arm. *Id.*

Plaintiff again saw Dr. Trujillo for follow-up on December 23, 2015. AR 261-3. Dr. Trujillo reported that an echocardiogram taken a few days earlier showed an ejection fraction of 50-55% and that Plaintiff continued to have exercise angina "in a

stable fashion." AR 261. Dr. Trujillo assessed Plaintiff with "coronary artery disease involving native coronary artery of native heart with other form of angina pectoris;" angina pectoris; fatigue; and improving cardiomyopathy. AR 263. Dr. Trujillo noted that Plaintiff's ejection fraction had improved "at least 5-10% with initiation of beta blocker and up titration of drug" and recommended "continued aggressive medical therapy." *Id.* Dr. Trujillo again reported that Plaintiff denied that he was suffering from anxiety or depression AR 262.

## B. Plaintiff's Disability Plan

Plaintiff asserted his claim for disability benefits under Unum Policy No. 465018001 (the "Plan"). AR 312. Under the Plan, Unum is obligated to pay Plaintiff 60% of his monthly earnings in the event he becomes disabled. AR 317. The Plan defines disability as follows:

> you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
>
> you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness of injury.
>
> After 24 on these of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience.

AR 334. The Plan defines the relevant terms set forth in bold above as follows:

> **MATERIAL AND SUBSTANTIAL DUTIES** means duties that ... are normally required for the performance of your regular occupation; and cannot be reasonably modified or omitted.
>
> **REGULAR OCCUPATION** means the occupation you are regularly performing when your disability begins. [Unum] will look at your

4

occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

**SICKNESS** means an illness of disease. Disability must begin while you are covered under the [P]lan.

AR 347-49. Plan benefits "are administered by the insurer and provided in accordance with the insurance policy issued to the Plan." AR 350. The Plan expressly delegates discretionary authority to make benefit determinations to Unum. AR 355. Benefit determinations "include determining eligibility for benefits and the amount of any benefits, resolving factual disputes, and interpreting and enforcing the provisions of the Plan." *Id.*

## C. Plaintiff's Employment with Westcon

As vice president of Westcon, Plaintiff's responsibilities included

Develop and manage weekly, monthly, quarterly plans for achieving key performance goals. Refine and adapt business plans in real time as business landscape evolves;

Build visibility and go to market plans with vendors and customers to create a competitive advantage and financial growth plan for Westcon and its partners;

Negotiate and execute regional and global vendor contracts and approval processes. Support regional and country Business Development Directors and Managers to increase revenues and profitability;

Manage domestic and international personnel; and

International and domestic travel, up to 25%; travel will increase with global portfolio and BlueSky platform rollout.

AR 857. The desired/required skills, knowledge, and experience for a vice president

at Westcon included 20 plus years of technology industry channel experience; 10 plus years of global senior management executive experience; 5 plus years of cloud experience; and 15 plus years in product development and vendor management. AR 858.

Westcon completed an occupation description form requested by Unum and indicated that Plaintiff worked 40+ hours a week; traveled 0-20% each week; and supervised 2 employees. AR 174.

Dr. Trujillo recommended that Plaintiff stop working as of August 21, 2015. AR 109. Plaintiff's employment with Westcon ended September 1, 2015. AR 159.

## D. Plaintiff's Disability Claim

Unum acknowledged receipt of Plaintiff's short term disability claim on August 6, 2015 and requested additional information from Plaintiff. AR 27. Dr. Trujillo completed the physician portion of Plaintiff's short term disability claim form and diagnosed Plaintiff with coronary artery disease and ischemic systolic heart failure. AR 34. Under restrictions and limitations, Dr. Trujillo listed that Plaintiff needed to avoid any activity that causes stress and be sedentary. AR 33. In support of these restrictions and limitations, Dr. Trujillo cited "cardiac catherization with moderate reduction in cardiac function, [ejection fraction] of 45%, [and] incomplete revascularization with severe small vessel CAD & [ ] OM." AR 33.

Dr. Trujillo also completed a Certification of Health Care Provider form on which he indicated that Plaintiff suffered from (1) "severe premature coronary artery disease;" (2) "reduced cardiac function;" and (3) "symptomatic angina at low

6

workload with a treadmill." AR 34. Dr. Trujillo also indicated that it would be necessary for Plaintiff to work intermittently or at less than a full schedule. AR 35. In response to a question about whether Plaintiff's condition was chronic, Dr. Trujillo responded that it was a "chronic condition with indefinite incapacitation." *Id.*

By letter dated August 13, 2015, Unum requested additional information from Dr. Trujillo. AR 59. In response to this request, Dr. Trujillo indicated that Plaintiff was restricted from working from August 21, 2015 until an unknown date and that he would re-evaluate Plaintiff's status on September 15, 2015. AR 69.

On a form completed September 22, 2015, Dr. Trujillo advised Unum that Plaintiff was "completely off work at this time." AR 141. On an updated version of this form completed January 6, 2016, Dr. Trujillo advised Unum that "[Plaintiff] should remain off the job as we are still stabilizing his condition." AR 267.

Unum initially approved Plaintiff's benefits claim through September 20, 2015 but ultimately extended Plaintiff's benefits through December 23, 2015. AR 94, 226, 238 & 246. By letter dated January 12, 2016, Unum notified Plaintiff that it would not be extending Plaintiff's benefits beyond December 23, 2015. AR 279-80. By way of explanation, Unum noted that it initially approved three weeks of benefits based on Plaintiff's stent placement and later approved an additional six weeks of benefits based on Plaintiff's arm surgery. AR 279. Unum then cited Plaintiff's December 23, 2015 appointment with Dr. Trujillo and stated that "[t]he medical records provided fail to illustrate specific medical findings to support

ongoing restrictions that would prevent you from performing the material and substantial duties of your regular sedentary occupation on a full time basis." AR 279-80.

In April of 2016, Plaintiff appealed Unum's decision not to extend his benefits beyond December 23, 2015. In support of his appeal, Plaintiff provided details about his health to a Unum representative (AR 359), and Bradley Fanestil, M.D., Plaintiff's primary care physician, provided records from Plaintiff's office visits on April 14 and April 27, 2016 (AR 387-89, 382-83). There is no evidence that Plaintiff sought any medical treatment from December 23, 2015 until he was seen by Dr. Fanestil in April of 2016.

In the notes from Plaintiff's office visit on April 14, 2016, Dr. Fanestil opined that Plaintiff's cardiovascular disease was disabling and that it was not healthy for Plaintiff to keep working in light of his ongoing problems and "recurrent multiple interventions" in the preceding year. AR 389. Dr. Fanestil noted that Plaintiff was playing racquetball for 2.5 hours twice a week and working out two other times each week. AR 387. Dr. Fanestil also assessed Plaintiff with fatigue that was likely the result of depression and prescribed bupropion. *Id.* Dr. Fanestil told Plaintiff to discontinue taking the bupropion at his April 27, 2016 visit based on concerns that he was having a negative reaction the drug. AR 381-82. At that time, Plaintiff's EKG was normal. AR 382.

Susan Grover, a certified rehabilitation registered nurse with a bachelor of science degree in nursing, reviewed Plaintiff's file on behalf of Unum. AR 395-400.

8

Ms. Gorver concluded (1) that Plaintiff's cardiac condition left him "capable of mainly seated work activity as of 12/23/15, as long as [Plaintiff] does no lifting [greater than] 10 pounds occasionally and only occasional standing/walking;" (2) that "there is no evidence of any significant symptoms related to stress and no support that the insured would not be able to deal with normal workplace stress or normal life stressors;" and (3) that Plaintiff's recovery from the surgical procedure on his left arm would usually not exceed 6 weeks and there was no medical data in the file supporting lifting restrictions beyond January 1, 2016 or further office visits to the surgeon. AR 399-400. Ms. Grover also noted that Plaintiff would have needed 2-3 days to return to normal functional capacity after he stopped taking bupropion due to side effects and that "[t]here is no further documentation of any side effects related to any of his medications." AR 400.

Richard Byard, a vocational consultant, also reviewed Plaintiff's file on behalf of Unum. AR 402-05. Mr. Byard revised the classification of Plaintiff's occupation from systems project manager to cloud solution manager based on further review of the available occupational information. AR 403. Mr. Byard determined that Plaintiff's occupation required a "sedentary" level of physical exertion with "frequent sitting, occasional standing, occasional walking, and the occasional lifting/exertion of force of up to 10 pounds," as well as "frequent keyboarding [and] occasional reaching, handling, and fingering." AR 403-4. Mr. Byard further determined that Plaintiff's nationwide business travel was a job specific requirement that was "not necessarily representative of the manner in which the

overall occupation is performed throughout the national economy" though it would

be reasonable to expect an occasional level of local business related travel in

Plaintiff's occupation and that Plaintiff would typically be required to work in

excess of 40 hours a week. AR 404. Mr. Byard ultimately concluded that the

physical demands of Plaintiff's occupation did not exceed his work capacity. *Id.*

By letter dated May 20, 2016, Unum advised Plaintiff that it had determined

that its initial decision not to extend disability benefits beyond December 23, 2015

was correct. AR 410-17. By letter dated July 1, 2016, Unum further advised

Plaintiff that any additional information he wished to have considered had to be

submitted by August 20, 2016 and that any such information would be reviewed o

determine if an additional appeal would be permitted. AR 445. Plaintiff's counsel

requested an additional 60 days to provide additional information but this request

was denied. AR 477 & 479. Unum also advised Plaintiff's counsel that the

governing disability policy did not provide for a second appeal. AR 462 & 479.

Plaintiff's counsel submitted additional information to Unum on August 18,

2016 including medical records from Dr. Trujillo and Dr. Fanestil. AR 486-513.

Plaintiff also provided letters from both Dr. Trujillo and Dr. Fanestil. In his letter,

Dr. Trujillo opined that Plaintiff "remains at significant risk for future cardiac

events;" will "likely ... succumb to coronary artery disease;" and "is unable to

continue in his previous career." AR 842-43. With respect to Unum's decision on

Plaintiff's benefits claim, Dr. Trujillo commented that it did not account for the

emotional/occupational stress of Plaintiff's job which could precipitate coronary

artery disease; that Plaintiff could experience angina with minimal exertion or emotional stress; and that Plaintiff has significant intolerance to medical therapy and needs more aggressive treatment for his depression/PTSD. AR 843. Dr. Trujillo also recommended that Plaintiff be seen by Jeff Boone who Dr. Trujillo described as "excellent at defining how emotional/job stress can affect cardiovascular status." *Id.* In Dr. Trujillo's opinion, "this component of [Plaintiff's] disability is the most difficult to quantify" but was determinative of his disability claims. *Id.* Plaintiff asserts that he did not have time to obtain a report from Dr. Boone within the time allotted for his submission of additional materials to Unum. AR 498 n. 63.

In his letter, Dr. Fanestil reported that, in addition to Plaintiff's coronary artery disease, Plaintiff had been suffering for 2 years from symptoms of anxiety and depression and from sympathetic and autonomic nervous system issues that had not been resolved through typical treatment as of August 10, 2016. AR 881. Dr. Fanestil also stated his opinion that as of August 21, 2015, Plaintiff was no longer capable of working as vice president of Westcon and that it was very unlikely that Plaintiff would ever regain the ability to be employed in such a position. *Id.*

Unum again had Mr. Byard review the requirements of Plaintiff's job with Westcon. AR 890-93. Based on his review of additional information, Mr. Byard found that Plaintiff's job demands were most consistent with those of the occupational titles of a vice president - product development and vice president - marketing, combined. AR 891. After listing the material and substantial duties of

these occupations, Mr. Byard concluded that the physical demands of Plaintiff's occupation were the same as those he previously identified. AR 891-2; 403-4.

Unum also had Ms. Grover review Plaintiff's file again. AR 894-99. Ms. Grover concluded that "it is unclear if [Plaintiff] would be capable of sustained 'sedentary' activities, as defined by [Byard's second] vocational review ..." AR 898. Ms. Grover referred the case for physician review. AR 898.

Plaintiff's file was then sent to Christopher Bartlett, M.D., a board-certified doctor in family medicine, for review. AR 908. Dr. Bartlett was specifically asked two questions. First, Dr. Bartlett was asked "[d]oes the available file documentation validate/support restrictions ... on function or limitations ... on function beyond 12/23/15...?" AR 906. Dr. Bartlett responded no to this question and explained that "[f]rom a whole person standpoint, the available information does not support that [Plaintiff] lacks the functional capacity for predictable and sustained full-time sedentary activities as defined by [Byard's second] vocational review." *Id.* Dr. Bartlett based this response on Plaintiff's reported physical activities, his normal physical and mental status examinations, the absence of any behavioral health treatment, his normal EKG showing normal ejection fraction, and his ability to generate 11 METS on a Graded Exercise Test indicating medium work level capacity. *Id.*

Second, Dr. Bartlett was asked "is there any evidence or medical signs of side effects resulting from the use of prescription medications ...?" *Id.* Dr. Bartlett responded that there was no evidence that Plaintiff had any side effects rising to

the level of impairment and that Plaintiff was able to perform activities well beyond sedentary levels while on his prescription medications.  AR 906-7.

By letter dated September 30, 2016, Unum notified Plaintiff's attorney that it had completed an additional appellate review of Plaintiff's claim for disability benefits and that the additional information submitted did not change its prior denial of additional benefits.  AR 911-14.

## II.  Standard of Review

Where, as here, an ERISA benefits plan grants an administrator discretionary authority to determine eligibility for benefits, a deferential standard of review is applied, asking only whether the benefits decision was arbitrary and capricious.  *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan,* 605 F.3d 789, 796 (10th Cir. 2010).  Under the arbitrary and capricious standard, "review is limited to determining whether the interpretation of the plan was reasonable and made in good faith."  *Id.* (citation omitted).   A benefits decision need not be the only logical one nor even the best one to be upheld under this standard so long as it falls somewhere on a continuum of reasonableness - even if on the low end.  *Kimber v. Thiokol*, 196 F.3d 1092, 1098 (10th Cir. 1999).  A benefits decision may be arbitrary and capricious based on a lack of substantial evidence, *i.e.* such evidence that a reasonable mind might accept as adequate to support the decision.  *Rekstad v. U.S. Bancorp,* 451 F.3d 1114, 1119-20 (10th Cir. 2006).

An inherent conflict of interest arises when the entity that determines

eligibility for benefits is the same entity that pays the benefits. *Metropolitan Life Ins. Co. V. Glenn,* 554 U.S. 105, 111-115 (2008). When such a conflict of interest exists as it does here, the benefits decision is still subject to the arbitrary and capricious standard of review but the conflict is weighed as a factor in determining whether there is an abuse of discretion. *Id.* at 115-116.

### III.  Analysis

### A.  Unum's Analysis of Plaintiff's Medical Condition

Plaintiff first argues that Unum's initial denial of benefits was premised on a mis-characterization of his medical condition. Specifically, Plaintiff asserts that Unum initially evaluated his claim for disability benefits as though it was premised solely on his August 31, 2015 PCI and his October 30, 2015 arm surgery rather than on his severe chronic coronary artery disease. I disagree.

While Unum's initial denial letter dated August 13, 2016 does specifically refer to Plaintiff's PCI and arm surgery, it also notes that Dr. Trujillo advised Plaintiff to stop working in August of 2015 due to coronary artery disease. AR 279. In addition, it is abundantly clear that Unum considered Plaintiff's history of coronary artery disease from the notes relating to both his first and second appeals, *see* AR 399; 895-98 & 906-8, as well as the correspondence from Unum denying these appeals, *see* AR 412-15 & 911-13. Under these circumstances, Unum's characterization of Plaintiff's medical condition throughout the claims process was not arbitrary and capricious.

Plaintiff next argues that Unum limited its review of Plaintiff's medical

records so that it could be willfully ignorant of the full extent of his condition. However, it is undisputed that Plaintiff's attorney provided Unum with medical records dating back 10 years in connection with Plaintiff's second appeal, and Unum's overall review was therefore not as limited as Plaintiff suggests. There is also no evidence to suggest that Plaintiff or his treating physicians were precluded from providing additional records to Unum at any other time while Plaintiff's claim for long term disability benefits was under consideration.

Plaintiff also argues that Unum ignored the stress inherent in his demanding occupation and his doctors' opinions about his ability to cope with such stress. Ms. Grover, however, addressed the stress component of Plaintiff's occupation in her review of Plaintiff's claim on appeal but found "no evidence of any significant symptoms related to stress and no support that the insured would not be able to deal with normal workplace stress or normal life stressors." AR 399-400. Dr. Bartlett also took Plaintiff's ability to handle stress into account but concluded that the lack of any prescribed behavioral health treatment was inconsistent with any behavioral health conditions "including intolerance of stress." AR 906-7.

The fact that Plaintiff received largely no treatment for his alleged depression and anxiety also undermines Dr. Fanestil's opinions that Plaintiff suffered from these conditions as a result of chronic long term stress and that they would make it very difficult for Plaintiff to continue in his occupation. AR 881. Finally, although Dr. Trujillo faulted Unum for failing to account for the stress of Plaintiff's job which he "imagine[d] is quite high," he acknowledged that the effects

of Plaintiff's job related stress on his cardiovascular health was difficult to quantify and, for that reason, referred him elsewhere for analysis of this issue. AR 843. Under these circumstances, I conclude that Unum's consideration of Plaintiff's job related stress did not render its denial of his disability benefits claim arbitrary and capricious.

Plaintiff next faults Unum for citing Plaintiff's level of exercise and normal test results as evidence that supports its denial of his request for long term disability benefits. While not dispositive of whether Plaintiff was disabled within the meaning of the policy, these facts are relevant to Plaintiff's claim, and Unum's reliance on them, along with all other evidence in the file, does not render its adverse benefit determination arbitrary and capricious.

Finally, Plaintiff challenges the appellate review of his benefits claim by Ms. Grover and Dr. Bartlett. First, Plaintiff argues that there is no evidence in the record that either Dr. Bartlett or Ms. Grover has "any relevant training or experience in treating advanced cardiac disease or, for that matter, in treating mental health conditions secondary to that condition." The same can also be said of Dr. Fanestil, who is board certified in internal medicine (AR 881), and of Dr. Trujillo with respect to Plaintiff's mental health conditions yet Plaintiff offers no other medical opinions to support his argument that Unum erred in its benefits decision.

Moreover, to show that Unum erred in failing to have his file reviewed by more specialized medical personnel, Plaintiff cites 29 C.F.R. 2560.503-1(h)(3)(iii)

16

which provides that

> ... in deciding an appeal of any adverse benefit determination ***that is based in whole or in part on a medical judgment*** ... the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment. (Emphasis added).

In initially denying Plaintiff's claim for disability benefits beyond December 23, 2105, Unum reviewed the Plaintiff's records and concluded that they "fail[ed] to provide specific medical findings to support ongoing restrictions that would prevent [Plaintiff] from performing the material and substantial duties of [his] regular sedentary occupation on a full time basis." AR 280. Thus, Unum did not a make a medical judgment as to whether Plaintiff suffered from coronary artery disease or the other cardiac conditions identified by Dr. Trujillo but rather determined that Plaintiff's medical records failed to establish that Plaintiff was incapable of performing his job despite these conditions. In this regard, it is notable that Dr. Trujillo never opined that Plaintiff was permanently disabled from performing his job prior to Unum's initial adverse benefit determination. Instead, Dr. Trujillo indicated that he was monitoring Plaintiff's ability to work on an ongoing basis. *See* AR 33, 36, 69, 110 & 267. Under these circumstances, Unum's reliance on the opinions of Ms. Grover and Dr. Bartlett did not render its denial of Plaintiff's benefits claim arbitrary and capricious.

Plaintiff additionally argues that it was a procedural irregularity to have Ms. Grover twice review Plaintiff's file. Assuming that Plaintiff was entitled to a second appeal, the fact that Unum also had Dr. Bartlett review Plaintiff's file in connection

with this appeal cures any irregularity resulting from Ms. Grover's second review since there is no dispute that Dr. Bartlett's opinions supported Unum's denial of Plaintiff's claim for disability benefits.

In sum then, there is no basis to conclude that Unum's analysis of Plaintiff's medical condition rendered its adverse decision on Plaintiff's benefits claim arbitrary and capricious.

## B. Unum's Analysis of Plaintiff's Occupation

Plaintiff argues that Unum consistently mis-characterized his occupation and that this mis-characterization contributed to the denial of his claim for ongoing disability benefits. I disagree.

It is undisputed that Unum labeled Plaintiff's occupation differently throughout the various stages of the claims process. Plaintiff argues that this fact demonstrates that Unum mishandled his claim but it is also indicative of good faith on Unum's part that it continued to revise the classification of Plaintiff's occupation as it received additional information. In any event, the only specific job duties that Plaintiff argues Unum failed to account for in its analysis of his occupation are its travel requirements and the stress associated with it.

The Plan provides that a participant is disabled when the participant is limited from performing the material and substantial duties of his regular occupation " as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location." AR 347. Any procedures set forth in Unum's claims manual are subject to this Plan

18

provision.  *See e.g.* AR 644 ("Each claim is unique and must be evaluated on its own merits.  The actual policy governing the claim must be referenced.").

In his analysis of the duties of both a cloud solution manager and a vice president-product development/vice president-marketing, Mr. Bayard acknowledged Plaintiff's representation of his job's travel demands but concluded that these demands were specific to Plaintiff's employment with Westcon and not necessarily representative of how these occupations are performed in the national economy.  AR 404 & 892.  While Plaintiff argues that Mr. Byard analyzed occupations different from his actual occupation, Mr. Byard reasonably identified the combined vice president position to be most consistent with Plaintiff's occupation after reviewing all the information in the file including the affidavit from Plaintiff's supervisor (AR 891), and Plaintiff has failed to identify any other differences between his vice president position at Westcon and the combined vice president position identified by Mr. Byard.  Unum therefore did not act unreasonably in determining that Plaintiff was still able to work at his occupation despite an alleged inability to meet the specific travel demands of his job with Westcon.

With regards to stress, Unum adequately considered this component of Plaintiff's occupation in its analysis of Plaintiff's medical condition as discussed above and reasonably determined that there was a lack of medical evidence demonstrating that Plaintiff was incapable of tolerating stress.  Thus, Unum did not fail to account for the stress of Plaintiff's occupation even if certain individuals who reviewed Plaintiff's file from a vocational perspective did not specifically

consider this factor. There is therefore no basis to conclude that Unum's analysis of Plaintiff's occupation rendered its adverse decision on Plaintiff's claim arbitrary and capricious.

## C. Unum's Consideration of the Opinions of Plaintiff's Treating Physicians

Plaintiff's argues that Unum impermissibly elevated the opinions of its reviewers over those of Plaintiff's treating physicians. This argument is easily dismissed. First, as Unum points out there is no requirement under ERISA that special deference be given to the opinions of treating physicians. *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834 (2003). As noted by the Supreme Court, "...if a consultant engaged by a plan may have an "incentive" to make a finding of "not disabled," so a treating physician, in a close case, may favor a finding of "disabled." *Id.* at 832. This is particularly true here where Plaintiff's primary treating physician, Dr. Trujillo, provided a much stronger statement regarding Plaintiff's claimed disability in conjunction with Plaintiff's second appeal than he had at any time prior.

Although Plaintiff argues that a plan administrator may engage in arbitrary and capricious behavior by giving greater weight to a non-treating physician's opinion over that of a treating physician "for no apparent reason," *Goetz v. Greater Georgia Life Ins. Co.,* 649 F. Supp. 2d 802, 813 (E.D. Tenn 2009), Unum had good reason to discount the opinions of Plaintiff's treating physicians that Plaintiff was permanently disabled. Among other things, Plaintiff's treating physicians did little to treat Plaintiff's alleged depression and anxiety. In fact, Dr. Trujillo did not

report that Plaintiff suffered from these conditions in contemporaneous medical reports he prepared after seeing Plaintiff.

Curiously, Plaintiff also argues that Unum impermissibly ignored the opinion of its reviewer Ms. Grover that "it is unclear if [Plaintiff] would be capable of sustained "sedentary" activities, as defined by [Byard's second] review." AR 898. Plaintiff ignores the fact, however, that Ms. Grover referred the file to Dr. Bartlett "for further analysis and comments regarding [Plaintiff's] function and supported [restrictions and limitations]." AR 898. After conducting his review, Dr. Bartlett concluded that the information in Plaintiff's file did not show that Plaintiff lacked "the functional capacity for predictable and sustained full-time sedentary activities as defined by [Byard's second] vocational review." AR 906. Dr. Bartlett's opinions therefore served to clarify any uncertainty expressed by Ms. Grover, and Unum did not act arbitrarily and capriciously in relying on Dr. Bartlett' opinion on this issue.

## IV. Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that

1. The Parties' Motion for Joint Determination [Doc # 43] is GRANTED;

2. A review of the evidence and arguments presented by both parties shows that Unum's denial of Plaintiff's claim for ongoing disability benefits was not arbitrary and capricious; and

3.  Judgment is entered in favor of Defendants, and this case is DISMISSED

WITH PREJUDICE.


Dated: October __19__, 2017.

BY THE COURT:


___s/Lewis T. Babcock_____
Lewis T. Babcock, Judge